# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| COUSHATTA TRIBE OF LOUISIANA | * | CIVIL ACTION NO. 07-1886 |
|---|---|---|
| VERSUS | * | JUDGE MELANÇON |
| JACK ABRAMOFF, ET AL. | * | MAGISTRATE JUDGE HILL |

## RULING

Before the court is the Defendants' Motion to Compel Michael Scanlon to Answer Questions to Which He Asserted the Fifth Amendment Privilege filed by Liberty Mutual Insurance Europe Ltd, Columbia Casualty Company, Lexington Insurance Company and Lloyd's Syndicates 623 & 2623 and 33 in which Arch Specialty Insurance Company and Max Bermuda Ltd. have joined (collectively, the "Insurer Defendants"). [rec. doc. 171]. Michael Scanlon ("Scanlon") has filed Opposition [rec. doc. 182], to which the Insurer Defendants have filed Replies. [rec. docs. 184, 188 and 191]. Greenberg Traurig, LLP ("Greenberg") has filed a memorandum setting forth its position as neither supporting, nor opposing, the Insurer Defendants' request, so long as it may fully cross-examine Scanlon on all pertinent issues, should this court overrule Scanlon's Fifth Amendment objection to questioning. [rec. doc. 181].

For the following reasons, the Motion to Compel Michael Scanlon to Answer Questions to Which He Asserted the Fifth Amendment Privilege is **denied**. Scanlon's objection to questioning based on the assertion of his Fifth Amendment privilege against self-incrimination is **sustained,** and accordingly, Scanlon is released as a witness.

The underlying litigation brought by the Coushatta Tribe of Louisiana (the "Tribe") has been settled by an agreement between the Tribe and Greenberg. [rec. doc. 149]. The Tribe, Greenberg and Scanlon have all agreed to voluntarily dismiss the claims and cross-claims they filed in this litigation. *Id*. The only remaining dispute is between Greenberg and its insurers over coverage and defense costs under the firm's professional liability insurance. To that end, the Insurer Defendants have filed Motions to Stay this litigation and to Compel Arbitration. [rec. docs. 88, 90, 102, and 144]. These motions have been granted by the Court, and accordingly, the coverage dispute will be decided by binding arbitration. [rec. doc. 155 and 157]. The Tribe, Greenberg and Scanlon have sought dismissal based upon the settlement agreement. [rec. doc. 149]. However, the Insurer Defendants have opposed dismissal until after they are permitted to obtain additional discovery, including the deposition of Scanlon. [rec. doc. 158].

A hearing on the Motion to Dismiss was conducted on October 10, 2008 before Judge Melancon. At that time, Judge Melancon permitted the deposition of Scanlon, but stayed all other discovery in the case. Ruling on the Motion to Dismiss was deferred. [rec. docs. 164 and 165].

On November 17, 2008, the deposition of Scanlon was taken. While Scanlon was extensively questioned, and responded to the majority of the questions asked of him, Scanlon refused to answer questions regarding the information disclosed by Scanlon to attorneys from Greenberg during a January 23, 2004 meeting which took place in Miami, Florida, on the basis

of his Fifth Amendment privilege against self-incrimination. By this Motion, the Insurer Defendants seek to compel Scanlon to answer deposition questions about the substance of the conversations between the parties at this January 23, 2004 meeting, overruling Scanlon's Fifth Amendment objection.

Scanlon pled guilty in the United States District Court for the District of Columbia to a federal criminal conspiracy charge, involving the corruption of public officials and the defrauding (by mail and interstate wire) of clients. As part of the conspiracy, Jack Abramoff (Abramoff) induced Indian tribe clients of Greenberg, including the Coushatta Tribe, to retain the services of Scanlon and his lobbying-support firm, Capitol Campaign Strategies. Then, Scanlon and Abramoff would split the profits earned for those services, which were overcharged to the clients, without disclosing their fee arrangement to the clients. The factual basis for Scanlon's plea reveals that the relevant business activities between Scanlon and Abramoff, upon which the charge is based, occurred "from 2001 through at least March 2004".

In connection with his plea, Scanlon was provided immunity from future prosecution by three federal prosecutorial entities: the Public Integrity Section of the Department of Justice ("DOJ), the Fraud Section of the DOJ and the United States Attorney's Office for the Southern District of Florida; Scanlon does not have immunity from prosecution by any other federal entity or any United States Attorney in any other federal jurisdiction, nor does he have immunity from prosecution by any state authority.

Pursuant to the terms of his plea agreement, Scanlon is required to fully cooperate with the government in other cases and investigations, and, if the government determines that he has provided substantial assistance to law enforcement officers in the investigation and prosecution of others, the government has promised Scanlon that it will file a motion for a downward departure from the United States Sentencing Guidelines under USSG § 5k1.1 or a motion under Rule 35,FRCrP, for a reduction of Scanlon's sentence.

Scanlon has not yet been sentenced; Scanlon is currently cooperating with DOJ in ongoing criminal investigations as required by the terms of his plea agreement. The record further reveals that the government is opposed to this court's ordering Scanlon to answer additional questions due to the "possible negative impact" on these ongoing criminal prosecutions and investigations in which Scanlon is expected to be, or is, a critical witness. [*See* rec. doc. 182-4, pg. 2-4].

**Validity of Scanlon's Invocation of the Privilege**

The Fifth Amendment protects an individual from being compelled to be a witness against himself. U.S. Const. Amend. V. The Fifth Amendment privilege against compulsory self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory . . . ." *Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972); *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1086 (5th Cir. 1979) ("The fact that the privilege is raised in a civil proceeding rather than a criminal prosecution does not deprive a party of its protection."). This constitutional

privilege protects a witness against incrimination under federal as well as state law. *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 78, 84 S.Ct. 1594 (1964); *Malloy v. Hogan* 378 U.S. 1, 11, 84 S.Ct 1489 (1964) ("the feared prosecution may be by either federal or state authorities."). Moreover, the privilege extends not only to answers that would in themselves support a conviction, but, likewise, "embraces those which would furnish a link in the chain of evidence needed to prosecute." *Malloy,* 378 U.S.at 11. Thus, the privilege "protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar*, 406 U.S. at 445.

The privilege against self-incrimination is not waived or extinguished by entry of a guilty plea; rather, the privilege remains unimpaired through sentencing. *Mitchell v. United States*, 526 U.S. 314, 324-327 (1999). This is so, "because of the danger of responding to questions that might have an adverse impact on [the criminal defendant's] sentence or on his prosecution for other crimes." *Id*. at 327. In sum, "liability for punishment continues until sentence has been imposed." *Id.* at 326. Thus, "[w]here the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony." *Id.; United States v. Hernandez,* 962 F.2d 1152, 1161 (5th Cir. 1992). This is particularly true given that a defendant's guilty plea is more like an offer to stipulate that he has done "some of" the proffered conduct which is sufficient for the court to find an adequate factual basis for the plea, not to illicit a waiver of the privilege for proceedings still to follow. *Mitchell*, 526 U.S. at 324-325.

5

Under Fifth Circuit precedent, the privilege against self-incrimination may be invoked where the witness "reasonably apprehends a risk of self-incrimination, . . . though no criminal charges are pending against him, . . . and even if the risk of prosecution is remote." *Wehling*, 608 F.2d at 1087, n. 5.

In determining whether the witness may validly assert the privilege and refuse to respond, "the court must determine whether answers to the questions might tend to reveal that the witness has engaged in criminal activities." *In re Corrugated Container Anti-Trust Litigation*, 620 F.2d 1086, 1091 (5th Cir. 1980). "If answering the questions might incriminate the witness, the court must next ask whether there is a risk, even a remote risk, that the witness will be prosecuted for the criminal activities that his testimony might touch on." *Id.* This determination "does not depend upon a judge's prediction of the likelihood of prosecution." *Id.* "When a witness can demonstrate *any* possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster." *Id.* at 1092 (emphasis added).

Further, "the claim of privilege must be sustained if it is 'evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'" *Steinbrecher v. C.I.R.*, 712 F.2d 195, 198 (5th Cir. 1983) *citing Hoffman v. United States*, 341 U.S. 479, 486-487, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

In this case, it is clear that answers to the questions posed might tend to reveal that the witness, Scanlon, has engaged in criminal activities. The insurer defendants seek to compel Scanlon to testify about the criminal conduct he engaged in with Abramoff over a period of several years. Although the insurer defendants couch their request as merely seeking information about what Greenberg knew about the criminal enterprise existing between Scanlon and Abramoff as set forth in Scanlon's Rule 11 Factual Stipulation supporting his plea, that information cannot be obtained without compelling Scanlon to divulge potentially incriminating responses about the criminal referral fee relationship, well beyond those facts which Scanlon has previously acknowledged, described in a general fashion, in his Rule 11 Factual Stipulation supporting his plea.[1] Indeed, the information sought is about the potentially incriminating content of conversations Scanlon had with third parties, which conversations, and

---

[1]This is particularly the case herein, given Greenberg's request that it be provided its right to fully and meaningfully cross-examine Scanlon should this court overrule his Fifth Amendment objection. As recognized by the Supreme Court, "even if the direct examination is limited to the questions and answers in the immunized transcript, there remains the right of cross-examination, a right traditionally relied upon expansively to test credibility, as well as to seek the truth. Petitioner's recognize this problem, but maintain that the antitrust defendants 'would be entitled to test the accuracy and truthfulness of [the witness's] repeated immunized testimony without going beyond the confines of that testimony.' *Regardless of any limitations that may be imposed on its scope, however, cross examination is intended to and often will produce information not elicited on direct.* We must assume that, to produce admissible evidence, the scope of cross-examination at the deposition cannot easily be limited to the immunized testimony." *Pillsbury v. Conboy*, 459 U.S. 248, 259-260, 103 S.Ct. 608 (1983) (emphasis added).

These same considerations militate against any attempt by this court to limit Greenberg's cross-examination. To do so would deny Greenberg the opportunity to explore Scanlon's truthfulness and the strength of any adverse testimony Scanlon may present against it. "The sufficiency of cross examination depends on the circumstances of each case." *United States v. Demchak*, 545 F.2d 1029, 1030 (5th Cir. 1977). Under the circumstances of this case, given Greenberg's claimed inability to present its own account of the substance of the conversations at the January 23, 2004 meeting, this court could not adequately protect Greenberg's interests if it were to place a limit on the scope of the cross-examination to only those facts set forth in connection with Scanlon's plea.

the content thereof, are not mentioned in Scanlon's plea agreement.

Further, the factual basis supporting Scanlon's plea was limited to the criminal conduct he engaged in with Abramoff over a period of several years; it included no facts suggesting criminal fee referral relationships Scanlon may have been engaged in with, or suggested to, Greenberg or other third parties. Compelling Scanlon to testify about the presently unknown content of the conversation Scanlon had with Greenberg may lead to the disclosure of exactly this additional potentially incriminating information, facts regarding existing or proposed criminal referral fee relationships or other criminal activity, not previously acknowledged by Scanlon in connection with his plea. This additional, and presently undisclosed, information could furnish a link in the chain of evidence needed to prosecute Scanlon for additional criminal wrongdoing and could lead to other evidence that could be used against him in such prosecution. *Malloy, Kastigar, supra.*

The undersigned also cannot find that answering the challenged questions might not incriminate Scanlon. Here, Scanlon appeared for deposition, and then, with the assistance of counsel, determined whether a truthful answer to each question posed might reasonably tend to incriminate him. That is exactly what the law entitles him to do. As confirmed by the insurer's counsel during oral argument, neither the Insurer Defendants nor this court know what the truthful answers to the challenged questions will be.[2] Hence, there is no basis for this court to determine that the answers could not expose Scanlon to adverse consequences, either by way of

---

[2] Of course, Scanlon and his lawyer know.

a more severe sentence or by way of additional prosecution by any number of state or federal authorities.

The record before this court demonstrates that Scanlon is presently awaiting sentencing, wherein he faces a potential maximum sentence of five years imprisonment. Under the current jurisprudence, the sentencing judge has great discretion to sentence Scanlon at either the high or low end of the federal sentencing guideline range; the sentencing judge is also vested with ample authority to depart upward or downward from the applicable guideline range in the event the judge finds the known facts justify such action. *See United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); *Gall v. United States,* --- U.S. ----, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007); *United States v. Tzep-Mejia*, 461 F.3d 522, 525 (5th Cir.2006) (noting that under the discretionary sentencing system established by *Booker*, a district court may impose three types of sentences: "(1) a sentence within a properly calculated Guideline range; (2) a sentence that includes an upward or downward departure as allowed by the Guidelines, which sentence is also a Guideline sentence; or (3) a non-Guideline sentence which is either higher or lower than the relevant Guideline sentence."). It is therefore clear that any additional incriminating testimony elicited from Scanlon in this action can be considered by the sentencing court as an aggravating factor warranting imposition of a harsher sentence, within or outside, the applicable guideline range, or make it less likely for Scanlon to get a downward departure from the guideline range.

It is equally clear that Scanlon's potential sentence range may be significantly reduced, either by way of the filing of a motion for a downward departure from the United States Sentencing Guidelines under USSG § 5k1.1 or a motion under Rule 35, depending upon the value of his assistance to the government as a cooperating witness. The record demonstrates, however, that the government opposes any order by this court requiring Scanlon to answer additional questions due to the "possible negative impact" on its ongoing criminal prosecutions and investigations in which Scanlon is expected to be, or is, a critical witness.

Under these circumstances, Scanlon certainly has a legitimate fear of adverse consequences at his sentencing from further testimony; this court will not jeopardize Scanlon's opportunity to receive a more favorable sentence, or his value to the government, by mandating that he answer additional questions. *Mitchell, Hernandez, supra.*

Furthermore, the record reveals that there is more than a fanciful possibility of further prosecution should Scanlon be compelled to testify. As previously noted, any additional, and presently undisclosed, information elicited from Scanlon by compelled resumed deposition could furnish a link in the chain of evidence needed to prosecute Scanlon for additional criminal wrongdoing. *Malloy, Kastigar, supra.*

It is beyond dispute that Scanlon (through his company CCS) and Abramoff did business with Indian tribes in numerous states which are encompassed within the jurisdiction of various state and federal prosecutorial agencies. Nothing in Scanlon's plea agreement precludes the initiation of prosecution by any state authority or any federal authority in these

10

jurisdictions, other than the three federal entities set forth in the plea agreement, namely the Public Integrity Section of the DOJ, the Fraud Section of the DOJ and the United States Attorney's Office for the Southern District of Florida.

Moreover, as acknowledged by the insurer's counsel during oral argument, it is clear that the applicable statute of limitations of various states in which Scanlon conducted fraudulent criminal activity has not expired, and hence, those states are not legally barred from prosecuting Scanlon. For example, as noted by Scanlon, he and Abramoff conducted business with the Saginaw Chippewas located in Michigan which has a six year statute of limitations on prosecutions for fraud; that limitation period has not run.

Thus, under Fifth Circuit precedent, this risk is more than sufficient support for Scanlon's valid assertion of his Fifth Amendment privilege; Scanlon has demonstrated "any possibility of prosecution which is more than fanciful" and that he therefore "has a reasonable fear of prosecution." *In re Corrugated Container, supra.*

In light of the above, the court concludes that Scanlon has validly invoked his Fifth Amendment right against self-incrimination in these proceedings. It is evident and readily apparent from the record before this court that responsive answers to the Insurer Defendant's questions could result in injurious disclosure which is real and not remote or speculative. Scanlon's privilege must therefore be sustained.[3] *Steinbrecher, supra.*

---

[3]For these same reasons, SR International Business Company SE's request, by Reply herein, that this court conduct an *in camera* hearing to determine if Scanlon has satisfied his burden of proof is not warranted. [rec. doc. 191].

**Scanlon did not Waive the Privilege**

This court's finding that Scanlon has validly asserted his Fifth Amendment privilege does not end this court's inquiry. The next question is whether, given Scanlon's guilty plea in the criminal action and his actions and testimony in this civil action, his Fifth Amendment privilege can be deemed waived in this case.

The privilege against self-incrimination is guaranteed by the Constitution, and the courts must therefore "indulge every reasonable presumption against waiver . . . ." *Smith v. United States*, 337 U.S. 137, 150, 69 S.Ct. 1000 (1949); *Emspak v. United States*, 349 U.S. 190, 198, 75 S.Ct. 687 (1955). Thus, waiver of the privilege is not lightly to be inferred. *Smith,* 337 U.S. at 150*; Poretto v. United States*, 196 F.2d 392, 394 (5th Cir. 1952). Further, waiver cannot properly be found on vague and uncertain evidence. *Smith*, 337 U.S. at 150.

Scanlon's guilty plea in his criminal proceeding is not sufficient to constitute a waiver of his Fifth Amendment privilege in this civil lawsuit. In *Mitchell v. United States*, the Supreme Court found that "a guilty plea is more like an offer to stipulate than a decision to take the stand" and that the "purpose of Rule 11 is to inform the defendant of what he loses by forgoing the trial, not to elicit a waiver of the privilege for proceedings still to follow." *Mitchell*, 526 U.S. at 323, 119 S.Ct. 1307. Although *Mitchell* concerned the issue of whether a defendant's guilty plea functioned as a waiver of the defendant's right to remain silent at sentencing, and thus did not directly address the relationship between a guilty plea and subsequent civil proceedings that occur before sentencing, the Court explicitly held that a "waiver of a right to

trial with its attendant privileges is not a waiver of the privileges which exist beyond the confines of the trial." *Id*. at 324, 119 S.Ct. 1307. That is the case herein.

Moreover, the Fifth Circuit, like other circuit courts, has held that "the constitutional privilege attaches to the witness in each particular case in which he is called upon to testify, without reference to his declarations at some other time or place or in some other proceeding." *Poretto*, 196 F.2d at 394. Indeed, most courts that have considered this issue have held that the waiver of the privilege against self-incrimination in one proceeding does not affect the right of a witness or accused to invoke the privilege as to the same subject matter in another independent proceeding, but is limited to the proceeding in which it occurs. *United States v. James*, 609 F.2d 36, 43 (2nd Cir. 1979) *citing Ottomano v. United States*, 468 F.2d 269, 273 (1st Cir. 1972) and *United States v. Miranti*, 253 F.2d 135, 139-40 (2d Cir. 1958); *In re Neff*, 206 F.2d 149, 152 (3rd Cir. 1953); *Ginyard v. United States,* 816 A.2d 21, 33 (D.C. 2003); *Morris Kirschman & Company, LLC v. Hartford Fire Insurance Company,* 2004 WL 1373277, *3 (E.D.La. 2004); *In re Vitamins Antitrust Litigation*, 120 F.Supp.2d 58, 66 (D.D.C. 2000) *citing* 42 A.L.R. Fed 793 at § 3 (1979) (citing cases with similar holdings in the First, Second, Third, Fourth and Ninth Circuits).

Recognizing the effects of this line of cases, by Reply, the Insurer Defendants argue that Scanlon waived his privilege against self-incrimination by his conduct in this litigation. They cite his failure to assert the privilege earlier in this proceeding, his verified responses to discovery, and testimony elicited at his deposition.

Waiver may be inferred, in an appropriate case, from a witness's voluntary conduct with respect to a subject matter of the litigation. *Morris, Kirschman & Company*, 2004 WL 1373277 at *3; *In re Vitamins Antitrust Litigation*, 120 F.Supp.2d at 66. "[W]here a witness has voluntarily answered as to materially [in]criminating facts . . . he cannot then stop short and refuse further explanation, but must disclose fully what he has attempted to relate." *Rogers v. United States,* 340 U.S. 367, 373-374, 71 S.Ct. 438 (1951). Thus, where incriminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details. *Id.* at 373. However, a witness does not lose his Fifth Amendment privilege unless he testifies to an incriminating fact. *Rogers*, 340 U.S. at 372-74. Accordingly, if the witness discloses nothing that might be characterized as incriminating, he does not waive his privilege. *See James*, 609 F.2d at 45; *Morris, Kirschman & Company*, 2004 WL 1373277 at *4; *In re Vitamins Antitrust Litigation*, 120 F.Supp.2d at 67-68.

The Insurer Defendants argue that in Scanlon's discovery responses, he voluntarily disclosed incriminating facts mandating revelation of further details about the substance of the conversations he and the Greenberg partners had during the January 23, 2004 meeting in Florida. The court disagrees.

In his discovery responses, Scanlon disclosed that he had communicated with numerous Greenberg employees during the course of his consulting work with the Tribes, and his attendance at progress and sales meetings at Greenberg's Washington office, and a "January 2004 Greenberg Traurig shareholders meeting at which Scanlon made a presentation regarding

his relationship with Abramoff." *See* Answer to Interrogatory 14. In his deposition, Scanlon admitted that he attended a meeting in January 2004 with Greenberg partners in Florida, stating the date, place and time of the meeting, as well as the persons who attended.

None of these disclosures are sufficiently incriminating so as to constitute a waiver, requiring Scanlon to testify, under oath, to the content of the meetings. The fact that Scanlon communicated with Greenberg employees or attended Greenberg meetings during the course of his work with the Tribes is not incriminating as this information in no way, in and of itself, links Scanlon to criminal activity. Scanlon worked in association with Abramoff, therefore any disclosure that Scanlon had contact with employees of Abramoff's firm, Greenberg, would be expected. Importantly, Scanlon does not state, nor does he suggest, that his contacts with Greenberg employees, or his attendance at Greenberg meetings, were other than in the ordinary course of lawful business. In sum, Scanlon's responses to discovery and interrogatories simply do not indicate that any type of criminal activity occurred, nor do they in any way link him to such activity, as such, they are not incriminating.[4]

Nor is there anything incriminating about Scanlon's divulging in his deposition that he was told by Abramoff that the "need" for the meeting was for him to "give a presentation to senior lawyers at Greenberg Traurig about [his] clients and the payment of potential referral fees for calendar year 2004." While the Insurer defendant's place great emphasis on the fact the Scanlon used the term "referral fees", as that is the term used to describe the illegal

---

[4] Of course, forcing Scanlon to testify about what went on at those meetings might well be highly incriminating.

payments Scanlon made to Abramoff, there is nothing *per se* illegal in the contractual, disclosed payment of a referral fee. The fees paid to Abramoff were illegal, not because they were paid, but because they were made without disclosure to the clients, in contravention of Abramoff's fiduciary duty to the clients, for his personal gain.

Finally, the court does not find that, by confirming his financial agreement with [5], and payments to [6], Abramoff in discovery responses, or by giving testimony during his deposition that he plead guilty to a federal criminal conspiracy charge or his confirmation and verification of the truth of the facts generally set forth in the factual basis supporting his plea, Scanlon waived his privilege with respect to questions regarding the substance of the conversations Scanlon had with the Greenberg partners during the January 23, 2004 meeting.

Scanlon's responses about the factual basis for his plea do not touch on the substance of his unknown and undisclosed conversations with Greenberg, and Scanlon never testified as to the content of these conversations, instead consistently invoking his privilege with regard to this line of questioning. This factual information therefore did not open the door to this line of questioning sought by the Insurer Defendants herein. Further, the court cannot construe any purported waiver so broadly as to encompass details of a conversation Scanlon had with third

---

[5] *See* Answer to Interrogatory 6 wherein Scanlon confirmed that he agreed to give Abramoff fifty percent of the profits received from CCS contracts with the Tribes, referring the reader to both the information in his plea agreement and the "Gimme Five" Final Report Before the Committee on Indian Affairs, both a matter of public record. This fact was expressly disclosed in paragraph 6 of the factual basis supporting Scanlon's plea.

[6] *See* Answer to Interrogatory 9 wherein Scanlon confirmed payment of fees to Abramoff. In paragraph 8 of the factual basis supporting Scanlon's plea, payments made by Scanlon to Abramoff with respect to Indian tribe clients were estimated to be $19,698,644.00.

16

parties. That is particularly the case here, given that any compelled further responses would expose Scanlon to extensive cross-examination by Greenberg, potentially exposing him to the host of additional adverse consequences set forth above.

Based on the foregoing, indulging every reasonable presumption against waiver and mindful not to infer waiver on vague and uncertain evidence, the undersigned cannot find a waiver in this case. *Smith, Emspak* and *Poretto*, *supra*. Scanlon disclosed nothing that might be characterized as incriminating with respect to the January 23, 2004 meeting, and therefore, he did not waive his privilege as to this line of questioning. *James*, *Morris, Kirschman & Company*, and *In re Vitamins Antitrust Litigation*, *supra*. Scanlon consistently objected to each question which might implicate an incriminatory response with respect to the subject meeting and did not voluntarily reveal any materially incriminating facts on this subject. He therefore can properly invoke the privilege to avoid disclosure and further explanation of the details and substance of his conversations with Greenberg partners sought by the Insurer Defendants herein. *Rogers, supra.*

With respect to the timing of the assertion of the privilege, the Supreme Court has stated that "[a] witness who is compelled to testify . . . has no occasion to invoke the privilege against self-incrimination until testimony sought to be elicited will in fact tend to incriminate. It would indeed be irrelevant for him to do so. If he is to have the benefit of the privilege at all, and not be confronted with the argument that he has waived a right even before he could have invoked it, he must be able to raise a bar at the point in his testimony when his immunity becomes

17

operative." *Brown v. United States*, 356 U.S. 148, 155, 78 S.Ct. 622 (1958). In this case, the record reveals that Scanlon invoked the privilege when compelled at his deposition to provide what he reasonably believed to be incriminating testimony. Prior to that time, he had no reason to do so. Accordingly, this court cannot find that Scanlon waived the privilege by failing to assert it earlier in this litigation.

For the above reasons, the Motion to Compel Scanlon to answer questions to which he asserted his Fifth Amendment right [rec. doc. 171] is **denied.**

The application of the Order is hereby stayed until August 10, 2009, to allow appeal of this Order to the District Judge and to allow movants to request a further stay from the District Judge of that part of this Order allowing Scanlon's release as a witness.

Signed this 31st day of July, 2009, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE